UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARRYL KEITH BOWLER,

    Petitioner,

v.                                  CASE NO. 2:09-CV-12735
                                    HONORABLE LAWRENCE P. ZATKOFF
                                    UNITED STATES DISTRICT JUDGE

BLAINE LAFLER,

    Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL IN FORMA PAUPERIS**

Darryl Keith Bowler ("Petitioner"), confined at the Chippewa Correctional Facility in Kincheloe, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his conviction for first-degree premeditated murder, M.C.L.A. 750.316(1)(a); felon in possession of a firearm, M.C.L.A. 750.224f; and felony firearm, M.C.L.A. 750.227b. For the reasons stated below, the petition for writ of habeas corpus is DENIED.

**I. Background**

Petitioner was convicted of the above offenses following a jury trial in the Wayne County Circuit Court, in which he was tried jointly with co-defendant Dajuan Mauruice Love.

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

    Here, Paul Richardson testified that he saw Love with a "long gun"/rifle and Bowler

with a handgun. Richardson testified that Bowler was firing shots as he chased the victim and others toward the alley, and Fransisco Diaz, who was stipulated as an expert in forensic pathology, testified that the exit wound of the bullet that killed the victim established that the fatal shot was fired from a handgun and not a rifle. Therefore, it is likely that Love was convicted for aiding and abetting.

As discussed *supra*, Richardson testified that Bowler had a handgun and was firing shots as he chased a group of people that included the victim. Furthermore, Diaz testified that the victim died from "a single gunshot to the back" from a handgun and the manner of death was homicide. Therefore, viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could find beyond a reasonable doubt that the charged crime was committed by Bowler. Furthermore, approximately 40 minutes after Bowler had a verbal dispute with the victim, Dwayne Flack and Richardson, an armed Love, who was a close friend of Bowler, accompanied Bowler back to the scene of the aforementioned dispute and stood by the side of Flack's suburban firing shots into the air as Bowler chased and fired shots at the victim and others.

*People v. Bowler,* No. 258262, * 2-3 (Mich.Ct.App. March 16, 2006)(internal citations omitted).

Petitioner's conviction was affirmed on appeal. *Id;, lv. den.* 476 Mich. 866, 720 N.W.2d 309 (2006).

Petitioner then filed a post-conviction motion for relief from judgment, which was denied. *People v. Bowler,* No. 04-004766-01 (Third Judicial Circuit Court for the County of Wayne, December 4, 2007). The Michigan appellate courts denied petitioner leave to appeal. *People v. Bowler,* No. 285675 (Mich.Ct.App. October 8, 2008); *lv. den.* 483 Mich. 1018, 765 N.W.2d 311 (2009).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Petitioner's conviction should be reversed because there was insufficient evidence to find for the conviction; alternatively, the motion for directed verdict should have been granted.

II. Petitioner should be granted a new trial due to newly discovered evidence; alternatively, counsel was ineffective for failing to investigate an alibi defense and interview and call an alibi witness.

III. The trial court deprived Petitioner of a fair trial by failing to ensure that the jury was not contaminated; alternatively, counsel was ineffective for failing to inquire in the jury contamination issue.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a 'highly deferential standard for

3

evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)(internal quotations omitted). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct.770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

### III. Discussion

#### A. The procedural default issue.

Respondent contends that petitioner's second and third claims are procedurally defaulted because he raised them for the first time in his post-conviction motion for relief from judgment and failed to show cause and prejudice, as required by MC.R. 6.508(D)(3), for not raising these claims in his appeal of right.

Under the procedural default doctrine, a federal habeas court will not review a question of federal law if the state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991). However, "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989). If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

In the present case, the Michigan Court of Appeals and the Michigan Supreme Court rejected petitioner's post-conviction appeal on the ground that "the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." These orders, however, did not refer to subsection (D)(3) nor did they mention petitioner's failure to raise these claims on his direct appeal as their rationale for rejecting his post-conviction claims. Because the form orders in this case citing Rule 6.508(D) are ambiguous as to whether they refer to procedural default or a denial of post-conviction relief on the merits, the orders are unexplained. *See Guilmette v. Howes*, 624 F. 3d 286, 291 (6th Cir. 2010). This Court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of petitioner's claims. *Id.*

The trial court rejected petitioner's post-conviction claims on the merits, without mentioning M.C.R. 6.508 (D)(3) or petitioner's failure to raise these claims on his direct appeal as the basis for rejecting petitioner's claims. Because the last reasoned state court decision rejected petitioner's claims on the merits, petitioner's second and third claims are not procedurally defaulted. *See Guilmette*, 624 F. 3d 289, 292.

**B. Claim # 1.  The insufficiency of evidence claim.**

Petitioner first alleges that there was insufficient evidence of premeditation and deliberation to sustain his conviction for first-degree murder.

The Michigan Court of Appeals rejected petitioner's claim:

Here, as discussed *supra*, Richardson testified that Bowler had a handgun and fired shots with it as he chased a group of people that included the victim. Furthermore, Diaz testified that the victim died from "a single gunshot to the back" from a handgun and the manner of death was homicide. Therefore, viewing the evidence presented by the prosecutor up to the time Bowler made his motion for a directed verdict, in a light most favorable to the prosecution, a rational trier of fact could reasonably infer that Bowler intentionally killed the victim. Moreover, Richardson testified that Bowler and Love, both of whom were armed, returned to the scene

>where Bowler had a prior altercation approximately 40 minutes earlier. Bowler's and Love's presence caused the victim and others to flee by foot. Bowler responded by chasing the group and firing shots. Thus, Bowler had at least two occasions to reconsider his actions, and therefore, viewing the evidence presented by the prosecutor, up to the time Bowler made his motion for a directed verdict, in a light most favorable to the prosecution, a rational trier of fact could reasonably infer that Bowler's actions were premeditated and deliberate.

*Bowler,* Slip. Op. at * 4 (internal citation omitted).

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted)(emphasis in the original).

More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 132 S. Ct. 2 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.*

Finally, on habeas review, a federal court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F. 2d 675, 679 (6th Cir. 1992). A habeas court therefore must defer to the fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F. 3d 780, 788 (6th Cir.2003).

To constitute first-degree murder in Michigan, the state must establish that a defendant's intentional killing of another was deliberate and premeditated. *See Scott v. Elo*, 302 F. 3d 598, 602 (6th Cir. 2002)(citing *People v. Schollaert*, 194 Mich. App. 158; 486 N.W.2d 312, 318 (1992)). The elements of premeditation and deliberation may be inferred from the circumstances surrounding the killing. *See Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 596 (E.D. Mich. 2001)(citing *People v. Anderson*, 209 Mich. App. 527, 537; 531 N. W. 2d 780 (1995)). Premeditation may be established through evidence of the following factors:

1. the prior relationship of the parties;
2. the defendant's actions before the killing;
3. the circumstances of the killing itself;
4. the defendant's conduct after the homicide.

*Cyars v. Hofbauer,* 383 F. 3d 485, 491 (6th Cir. 2004); *Anderson*, 209 Mich. App. at 527.

Although the minimum time required under Michigan law to premeditate "is incapable of exact determination, the interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a 'second look.'" *See Williams v. Jones,* 231 F. Supp. 2d 586, 594-95 (E.D. Mich. 2002)(quoting *People v. Vail,* 393 Mich. 460, 469; 227 N.W. 2d 535 (1975)). "A few seconds between the antagonistic action between the defendant and the victim and the defendant's decision to murder the victim may be

7

sufficient to create a jury question on the issue of premeditation." *Alder v. Burt,* 240 F. Supp. 2d 651, 663 (E.D. Mich. 2003). "[A]n opportunity for a 'second look' may occur in a matter of seconds, minutes, or hours, depending upon the totality of the circumstances surrounding the killing." *Johnson,* 159 F. Supp. 2d at 596(quoting *People v. Berthiaume*, 59 Mich. App. 451, 456 (1975)). Premeditation and deliberation may be inferred from the type of weapon used and the location of the wounds inflicted. *See People v. Berry*, 198 Mich. App. 123, 128; 497 N. W. 2d 202 (1993). Use of a lethal weapon will support an inference of an intent to kill. *Johnson,* 159 F. Supp. 2d at 596 (citing *People v. Turner*, 62 Mich. App. 467, 470; 233 N.W. 2d 617 (1975)).

In the present case, there was sufficient evidence for a rational trier of fact to conclude that petitioner acted with premeditation and deliberation when he shot the victim. The evidence established that petitioner had been engaged in an argument with the victim some forty minutes prior to the shooting. Evidence that petitioner had a prior dispute with the victim supports a reasonable inference that the subsequent shooting was premeditated. *Scott,* 302 F. 3d at 603. Petitioner and the co-defendant left the scene and returned forty minutes later, both armed with firearms. Petitioner then chased after the victim while shooting at him. The fact that petitioner pursued after the victim with a gun, tracked him down, and then shot him would support a finding of premeditation and deliberation so as to support a first-degree murder conviction. *See e.g. Daniels v. Burke*, 83 F.3d 760, 766 (6th Cir. 1996). There was also testimony that petitioner fired multiple shots, which would also be sufficient to establish premeditation and deliberation. *See Crawley v. Curtis*, 151 F. Supp. 2d 878, 888-89 (E.D. Mich. 2001). Finally, evidence that petitioner shot the victim in the back also supports a reasonable inference that the shooting was premeditated. *See e.g. Young v. Withrow,* 39 Fed. Appx. 60, 62 (6th Cir. 2002).

To the extent that petitioner challenges the credibility of the witnesses, he would not be entitled to habeas relief. An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims. *Gall v. Parker*, 231 F. 3d 265, 286 (6th Cir. 2000). The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim. *Id.* Because the evidence presented at trial was legally sufficient from which a rational trier of fact could find the elements of first-degree murder beyond a reasonable doubt, petitioner is not entitled to habeas relief on his first claim.

### C. Claim # 2. The newly discovered evidence claim/ineffective assistance of trial counsel claim.

In his second claim, petitioner claims that he has newly discovered evidence of innocence in the form of an affidavit from his aunt, Cassandra Bowler, whom he claims could provide an alibi for him at the time of the crime. Alternatively, petitioner claims that his trial counsel was ineffective for failing to call his aunt as a witness at trial.

In *Herrera v. Collins*, 506 U.S. 390, 400 (1993), the Supreme Court held that claims of actual innocence based on newly discovered evidence fail to state a claim for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding. Federal habeas courts sit to ensure that individuals are not imprisoned in violation of the constitution, not to correct errors of fact. *Id.* Freestanding claims of actual innocence are not cognizable on federal habeas review, absent independent allegations of constitutional error at trial. *See Cress v. Palmer,* 484 F. 3d 844, 854-55 (6th Cir. 2007)(collecting cases); *See also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 873 (E.D. Mich. 2010). Accordingly, petitioner would not be entitled to habeas relief on any newly discovered evidence claim.

9

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id*. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 130 S. Ct. 383, 390-91 (2009). More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Additionally, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id.* (citing *Yarborough v. Alvarado*, 541 U.S. at 664). Pursuant to § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner.

*Id.*

Petitioner has not attached a copy of his aunt's affidavit to his petition. This Court, however, has reviewed a copy of Cassandra Bowler's affidavit that petitioner attached to his post-conviction motion for relief from judgment that he filed in the state trial and appellate courts. [See This Court's Dkt. # 6-12]. In her affidavit, Ms. Bowler states that petitioner arrived at her house around 8:00 p.m. on the night in question. After dinner, petitioner and several other people began watching a movie. At approximately 10:00 p.m., Ms. Bowler went upstairs for the night. At approximately 11:00 p.m., Ms. Bowler was getting ready for bed when she heard numerous gunshots. Ms. Bowler called downstairs to petitioner and another individual, who both indicated that they were still at the house. Ms. Bowler indicated that she went back to bed and "fell asleep shortly thereafter."

The problem with petitioner's proposed alibi is that the shooting took place around 12:30 -1:00 a.m., after petitioner's aunt had gone to sleep. The failure to present a proposed alibi witness who would not lead to a defendant's acquittal does not amount to the ineffective assistance of counsel. *See Millender v. Adams,* 376 F. 3d 520, 526-27 (6th Cir. 2004). Because there was a window of opportunity for petitioner to have committed the murder after his aunt went to bed, petitioner was not prejudiced by counsel's failure to call her as a witness. *See e.g. Fargo v. Phillips,* 58 Fed. Appx. 603, 607-08 (6th Cir. 2003). Stated differently, because petitioner's aunt could not have provided an "air-tight" alibi defense, counsel was not ineffective for failing to call her testify at trial. *See Moore v. Parker*, 425 F. 3d 250, 253-54 (6th Cir. 2005). Petitioner is not entitled to habeas relief on his second claim.

**D. Claim # 3. The juror misconduct/ineffective assistance of counsel claim.**

In his third claim, petitioner argues that the trial court deprived him of a fair trial by failing to take steps to ensure that the jury was not contaminated by comments made by a prospective juror to two other prospective jurors during a lunch recess in the middle of the jury selection, in which this prospective juror told two other prospective jurors that she knew petitioner and the co-defendant from her neighborhood, that they had tried to rob her son, and had "terrorized her". Alternatively, petitioner contends that trial counsel was ineffective for failing to pursue the potential jury contamination issue.

After lunch recess, the judge indicated that his clerk had informed him that juror # 5, a Ms. Jones, informed the jury assembly room employee that she knew petitioner and his co-defendant because they had tried to rob her son. The judge indicated that he was going to question Ms. Jones about what she knew and whether she had shared this information with other jurors. (Tr. 8/24/2004, pp. 43-44). On the record, Ms. Jones indicated that she knew the defendants because she had just bought a house and "they terrorized–they were in the group." Ms. Jones informed the judge that she had eaten lunch with two other jurors but did not tell them that she knew the defendants. Ms. Jones indicated that she could not be fair or impartial. The judge excused Ms. Jones. (*Id.* at pp. 44-49).

Juror # 4, a Ms. Burks, indicated that she and another juror named Ms. Lambert had eaten lunch with Ms. Jones. Ms. Jones told Ms. Burks that she knew the defendants from the neighborhood and did not want to serve on the jury because she was afraid of them. Ms. Burks indicated that she did not share this information with any other jurors. (*Id.* at p. 50).

The judge questioned Ms. Lambert, who likewise indicated that she ate lunch with Ms. Jones, who informed Lambert that she knew the defendants from the neighborhood and that it made

12

her nervous because they "terrorized the neighborhood" where Ms. Jones and her son lived. Ms. Lambert did not speak to anyone else about this conversation. (*Id.* at p. 52).

At the conclusion of the hearing, the judge indicated that he would excuse these three jurors.(*Id.* at p. 52). Co-defendant's counsel asked the judge to question the remaining jurors about whether they had heard Ms. Jones' story. The judge replied that he was concerned about how to phrase such a question without putting his client "behind the eight ball." (*Id.* at p. 53). Petitioner's counsel suggested that the judge could ask the jurors whether they had learned anything after talking to the three jurors that had been excused. (*Id.* at p. 54).

After the jury venire was brought back into the courtroom and voir dire had resumed, the judge engaged in the following colloquy with the prospective jurors:

> THE COURT: Anybody on the juror (sic) discuss or overhear anybody talking about this case or any of the people involved in this case during lunch hour.
>
> (No response).
>
> THE COURT: Okay. Okay, I will take it the answer is no.

(*Id.* at pp. 60-61).

It is well established that a jury's verdict "must be based upon the evidence developed at the trial." *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). Under the Sixth and Fourteenth Amendments, "trial by jury in a criminal case necessarily implies at the very least that the 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel." *Turner v. Louisiana*, 379 U.S. 466, 472-73 (1965).

"[T]he Sixth Amendment does not obligate state trial courts to investigate every allegation of bias or juror misconduct." *Williams v. Bagley,* 380 F. 3d 932, 949 (6th Cir. 2004)(citing *Mu'Min v. Virginia*, 500 U.S. 415, 427 (1991)). Instead, a trial court is constitutionally required to inquire about potential juror bias or misconduct only when "under the circumstances presented there was a constitutionally significant likelihood that, absent questioning about [the potential bias], the jurors would not be as indifferent as (they stand) unsworne," *Id* (quoting *Ristaino v. Ross*, 424 U.S. 589, 596 (1976)) (internal quotation marks omitted), or when "a trial court is presented with evidence that an extrinsic influence has reached the jury which has a reasonable potential for tainting that jury." *Id.* (quoting *Nevers v. Killinger* 169 F. 3d 352, 373 (6th Cir. 1999)). Moreover, "[s]ince the trial judge is in the best position to determine the nature and extent of alleged jury misconduct, his decision on the scope of proceedings necessary to discover misconduct is reviewed only for an abuse of discretion." *United States v. Rigsby,* 45 F. 3d 120, 125 (6th Cir. 1995)(quoting *United States v. Shackelford*, 777 F. 2d 1141, 1145 (6th Cir. 1985)).

The question of whether a trial court has seated a fair and impartial jury is a factual one, involving an assessment of credibility. *Gall v. Parker,* 231 F. 3d at 308(citing *Patton v. Yount*, 467 U.S. 1025, 1038 (1984)). A state trial court's finding on the impartiality of a juror or a jury is a factual finding that is presumed correct under § 2254 unless a habeas petitioner can prove otherwise by convincing evidence. *Id.* at 334. The standard of review on habeas does not permit a court to substitute its view of possible juror bias for the state court's view; a habeas court may only overturn the state court's findings of juror impartiality if those findings were manifestly erroneous. *See DeLisle v Rivers*, 161 F. 3d 370, 382 (6th Cir. 1998).

In the present case, the judge removed Ms. Jones and the two prospective jurors whom had

14

been exposed to Ms. Jones' information from the jury. The judge also asked the remaining jurors whether they had discussed or overheard anything during the lunch recess concerning the case or any of the persons involved. None of the jurors answered affirmatively. The judge's question to the entire jury panel concerning whether they had been exposed to any information about the case was sufficient because individualized examination of a jury venire is not required by the Federal Constitution. *See U.S. v. Phibbs,* 999 F. 2d 1053, 1071 (6th Cir. 1993). In light of the fact that Ms. Jones and the two potential jurors whom had been made aware of petitioner's prior activities against Ms. Jones and her son had been removed from the jury, petitioner is not entitled to habeas relief because there is no evidence that any of the remaining jurors were aware of petitioner's prior activities or Ms. Jones' fears about petitioner. *See e.g. Young v. Trombley,* 435 Fed. Appx. 499, 505-06 (6th Cir. 2011)(state court's determination that petitioner was not deprived of his Sixth Amendment right to an impartial jury was not an unreasonable determination of the facts in light of the evidence presented in the State court proceeding, as would warrant federal habeas relief, where the record contained no evidence or other indication that any member of the jury was influenced by the fact that a dismissed juror might have previously known one of the victims).

Petitioner's related ineffective assistance of counsel claim must be rejected because petitioner's trial counsel and co-defendant's counsel both asked the judge to question the remaining jurors about possible exposure to Ms. Jones' story. Then, the judge did, in fact, ask the jurors whether they had discussed or overheard other persons talking about the case or the persons involved during lunch. Petitioner is not entitled to relief on his third claim.

### IV. Conclusion

The Court will deny the petition for writ of habeas corpus. The Court will also deny a

certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because jurists of reason would not find this Court's resolution of his claims to be debatable. *See Strayhorn,* 718 F. Supp. 2d at 854. The Court will also deny petitioner leave to appeal *in forma pauperis* because the appeal would be frivolous. *Myers v. Straub,* 159 F. Supp. 2d 621, 629 (E.D. Mich. 2001).

### V. ORDER

Accordingly, the Petition for Writ of Habeas Corpus is **DENIED.**

The Court further **DENIES** a certificate of appealability and leave to appeal *in forma pauperis*.

IT IS SO ORDERED.

S/Lawrence P. Zatkoff

                          LAWRENCE P. ZATKOFF
                          UNITED STATES DISTRICT JUDGE

Dated: December 22, 2011

## CERTIFICATE OF SERVICE

    The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on December 22, 2011.

                          S/Marie E. Verlinde
                          Case Manager
                          (810) 984-3290